The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pfeiffer and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all times relevant to this claim.
2. An employment relationship existed between plaintiff and defendant-employer.
3. The carrier on the risk for workers' compensation purposes is Liberty Mutual Insurance Company.
4. Plaintiff's average weekly wage is $330.00, which yields a weekly compensation rate of $220.01.
5. The parties stipulated into evidence the deposition of J. Bohannon Mason, M.D. and a packet of 193 pages of records consisting of (1) plaintiff's personnel file; (2) plaintiff's medical records; and (3) recorded statements of plaintiff, Charles Pleasant, and James Willis.
6. The issues for determination are whether plaintiff sustained a compensable injury by accident on 12, 13, or 14 October 1998, and if so, to what medical and indemnity benefits is she entitled.
 ***********
Based on the findings of fact found by the Deputy Commissioner and the evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff had been employed by defendant-employer since 1969 or 1970. At the time of her alleged injury by accident in October 1998, plaintiff was 76 years old and her job duties with defendant-employer included assembling boxes and sweeping.
2. On 12, 13, or 14 October 1998, while assembling boxes for defendant-employer, plaintiff slipped and fell, landing on her right knee. No one witnessed this fall, nor did she tell anyone at the time that she had fallen. Plaintiff was able to get up right away, and after rubbing her knee for five to ten minutes, her knee did not hurt as bad and plaintiff was able to continue working. Plaintiff did not believe that she had hurt her knee when she fell and plaintiff continued working her regular job for two to three days after she fell and hit her knee.
3. On Friday 16 October 1998 near the end of her shift, plaintiff pushed a box, turned, and when she twisted, she felt immediate sharp pain in her right knee. Plaintiff's pain upon turning and twisting was severe enough that she initially was unable to move or walk. A coworker noticed that plaintiff was in pain and asked if plaintiff was okay. Plaintiff's supervisor, Charles Pleasant, also noticed that something was wrong and approached plaintiff. Plaintiff told him that she had hurt her leg when she turned; however, she did not tell him then that she had fallen either that day or on a previous day. Plaintiff testified to the contrary, that she did inform Mr. Pleasant that she fell a few days earlier.
4. Because this incident occurred just prior to the end of plaintiff's shift, she did not report to the company clinic that day, nor did she complete an accident report. Instead, plaintiff wanted to go home and Mr. Pleasant arranged for a coworker to drive her home. This was the last day that plaintiff worked for defendant-employer.
5. On Monday 19 October 1998, plaintiff's knee continued to hurt; consequently, she reported to the company clinic for medical attention. At this time plaintiff reported to the nurse's assistant on duty that she felt pain on 16 October 1998 when she pushed an empty box. According to the notation made by the nurse's assistant, plaintiff did not report striking anything, tripping, or falling; she "just felt pain" and "just turned wrong."
6. The human resource manager for plaintiff's plant, James Willis, was notified when plaintiff reported to the clinic. Mr. Willis went to the clinic and asked plaintiff what had happened. Plaintiff reported to Mr. Willis that her knee had just started hurting. Plaintiff did not report to Mr. Willis that she had struck her knee, tripped, or fallen, even after direct questioning from Mr. Willis. It was not until six to eight weeks later that Mr. Willis first learned that plaintiff had fallen a few days prior to the twisting incident of 16 October 1998.
7. Defendants denied plaintiff's claim pursuant to a Form 61 that was filed with the Industrial Commission on or about 23 February 1999.
8. After being seen in the company clinic, plaintiff reported to her family physician's practice, South Point Family Practice, where she was seen on 19 October 1998 by Dr. McPherson. Plaintiff reported to Dr. McPherson that on 16 October 1998 she pushed a box, turned around and twisted, and felt pain in her right knee. Plaintiff did not report to Dr. McPherson that she had fallen several days prior to the twisting incident on 16 October 1998.
9. Plaintiff was later referred by her family physician to Dr. Mason, an orthopedic surgeon. Plaintiff first saw Dr. Mason on 10 November 1998. Dr. Mason's medical note from that examination refers to a twisting injury sustained by plaintiff. Nowhere does Dr. Mason's note refer to a fall. Furthermore, on the patient questionnaire filled out by plaintiff, she did not indicate that she had suffered a fall on or before 16 October 1998. In fact, the first mention in Dr. Mason's notes of a fall appeared in April 1999. It is Dr. Mason's opinion, furthermore, that had plaintiff fallen and injured herself, he would have expected her to suffer intense pain from the immediate onset of the fall.
10. Dr. Mason referred plaintiff for physical therapy. Plaintiff's initial physical therapy visit listed as the onset of her complaints plaintiff turning and twisting while pushing a box. The physical therapy notes do not reveal that plaintiff ever complained of having fallen.
11. Dr. Mason's conservative treatment of plaintiff was unsuccessful. Therefore, on 30 March 1999 he ordered an MRI. The MRI revealed avascular necrosis. Plaintiff had already been diagnosed with a fracture. Dr. Mason recommended a complete right knee arthroplasty. Plaintiff underwent this total knee replacement on 21 June 1999. Dr. Mason wrote plaintiff out of work as of the date of her surgery. There is no evidence of record to show that Dr. Mason has since released plaintiff to return to work in any capacity.
12. Plaintiff's injury to her right knee can be attributed at least in part to the twisting incident at work on 16 October 1998. Dr. Mason also felt that trauma could have contributed to the injury; however, as he defines it, the "trauma" involved could have been the twisting incident as opposed to a fall.
13. When plaintiff pushed the box, turned, and twisted on 16 October 1998, she was doing her normal job in the usual, customary manner. Other than the injury occurring to her knee at the time, there was no unlooked for or untoward event when plaintiff pushed the box, turned, and twisted.
14. Based upon the greater weight of the evidence of record, and in particular, the medical evidence of record, plaintiff has failed to prove that the injury to her right knee is causally related to any fall on 12, 13, or 14 October 1998.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove by the greater weight of the medical evidence that her knee injury is causally related to any work-related fall on 12, 13, or 14 October 1998. N.C. Gen. Stat. § 97-2(6).
2. Furthermore, the greater weight of the evidence of record demonstrates that plaintiff injured her right knee at work when she pushed a box, turned, and twisted on 16 October 1998. However, this incident does not constitute an injury by accident under the Act as plaintiff was performing her normal job duties in her usual, customary manner, and there was no interruption of her normal work routine that precipitated the injury to her right knee. N.C. Gen. Stat. § 97-2(6);Davis v. Raleigh Rental Center, 58 N.C. App. 113, 292 S.E.2d 763 (1982).
3. Therefore, plaintiff is entitled to no benefits under the North Carolina Workers' Compensation Act.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Under the law, plaintiff's claim must be, and the same is HEREBY DENIED.
2. Each side shall bear its own costs of this proceeding.
This the ___ day of October 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER